**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| MICHELLE DIANE KING,         )<br>    **Plaintiff,**                )<br>                            )<br>**vs.**                            )<br>                            )<br>**BP EXPLORATION & PRODUCTION,**   )<br>**INC.,** *et al.,*                  )<br>    **Defendants.**            ) | **CIVIL ACTION 1:22-00463-KD-MU** |

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment. (Docs. 34-36).

**I.     Findings of Fact**[1]

Stemming from the April 2010 BP Deepwater Horizon oil spill, on July 6, 2022 Plaintiff Michelle Diane King (King) filed a Back-End Litigation Option (BELO) action for Later Manifested Physical Conditions (LMPC) against Defendants BP Exploration & Production, Inc. and BP America Production Co. (Defendants) in the U.S. District Court (E.D. La), MDL No. 2179.  (Doc. 1). King's action was filed pursuant to the BELO provisions of the BP/Deepwater Horizon Medical Benefits Class Action Settlement Agreement (MSA). (Id.) King is a Class Member under the MSA. (Id.)

In her Complaint, King alleges that she was a clean-up worker for the oil spill from May 2010 to April 2011. (Doc. 1 at 1).  Specifically, King asserts as follows:

> … Plaintiff would work up to seven days a week for up to twelve hours per day on a typical workday … was occasionally provided with rubber boots, latex gloves and a mask. Plaintiff had a number of different duties during this time period, including, but not limited to performing Beach Clean-up work on Orange Beach, Gulf Shores, and Dauphin Island … Plaintiff received continuous exposure to BP's toxic substances, including COREXIT, through her oil spill clean-up and response work activities …

***

---

1 The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

> … While performing Response Activities as a Clean-Up Worker, Plaintiff was exposed to and came into contact with oil, other hydrocarbons, chemical dispersants, and other toxic substances when her eyes, nose, mouth, and skin, and airways were exposed.
>
> As a result of this exposure, Plaintiff was diagnosed with Lung Cancer (non-small cell carcinoma) on April 19, 2018. Plaintiff's exposure during the time she worked as a Clean-Up Worker for the Oil Spill was a substantial contributing cause of the above listed medical condition(s).
>
> As a result of Plaintiff's exposure, Plaintiff has developed a reasonable fear that in the future she may develop a severe disease, injury, or illness, including, but not limited to cancer(s) arising out of, resulting from, and/or relating to Plaintiff's Later-Manifested Physical Condition …

(Doc. 1 at 10-11).

On November 10, 2022, King's BELO action was transferred to this Court. (Docs. 6-7). On November 16, 2022, a Case Management Order issued, setting King's expert deadline as July 14, 2023. (Docs. 8-10). On May 16, 2023, King moved for a 90-day extension, which was granted, establishing a new expert deadline of September 12, 2023. (Docs. 21, 24). On July 19, 2023, King's counsel filed an amended motion to withdraw, which was granted, and King notified the Court that she wished to proceed *pro se*. (Docs. 29-32). To date, King has not disclosed any expert witnesses. On September 19, 2023, Defendants moved for summary judgment. (Docs. 34-36). King was given the opportunity to respond (Doc. 38), but to date has not done so.

## II.    Standard of Review

"Summary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Williamson v. Brevard Cty., Fla., 928 F.3d 1296, 1304 (11th Cir. 2019) (citing Fed. R. Civ. P. 56(a)). "The movant bears the burden of presenting pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any that establish the absence of any genuine, material factual dispute." Id. (citing Procaps S.A. v. Patheon, Inc., 845 F.3d 1072, 1079 (11th Cir. 2016) (citations and quotations omitted)). The district

courts are "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013) (citation omitted).

If the non-movant bears the burden of proof at trial on the dispositive issue, the movant may meet its burden by pointing out the insufficiency of the evidence with respect to an essential element of the non-movant's claims. Celotex v. Catrett, 477 U.S. 317, 325 (1986). The burden then shifts to the non-movant who must set out specific facts, supported by the evidence, to show that a genuine issue exists. Id. at 324. Thus, if the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Id. at 323.

"[A] non-movant's failure to respond to a defendant's motion for summary judgment is not fatal; rather, the court must determine if the facts in the record illustrate that the movant is entitled to summary judgment." Ogwo v. Miami Dade Cty. School Bd., 702 Fed. Appx. 809, 810 (11th Cir. 2017) (citing Dixie Stevedores, Inc. v. Marinic Maritime, Ltd., 778 F.2d 670, 673 (11th Cir. 1985)). "[W]hen the non-movant fails to properly address a party's factual assertions, the court may consider those facts undisputed and grant summary judgment if the facts in the record -- including those considered undisputed -- illustrate that the movant is entitled to judgment in its favor." Id. (citing Fed. R. Civ. P. 56(e)).  Additionally, SDAL Local Rule 7.2(b) requires a party responding to a Rule 56 motion to specify the disputed facts, if any, and that failure to do so will be interpreted as an admission that there is no material factual dispute:

> ... the party or parties in opposition shall file a brief in opposition thereto, and, if it is contended that there are material factual disputes, shall point out the disputed facts appropriately referenced to the supporting document or documents filed in the action. Failure to do so will be considered an admission that no material factual dispute exists; provided, that nothing in this rule shall be construed to require the non-movant to

3

respond in actions where the movant has not borne its burden of establishing that there is no dispute as to any material fact.

S.D. Ala. L.R. 7.2(b). Moreover, in United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004), the Eleventh Circuit explained "[t]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." Further:

> ... the district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials ... At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment ... In addition, so that there can be an effective review of the case on appeal, the district court's order granting summary judgment must [ ] indicate that the merits of the motion were addressed …

Id. (citations omitted).

### III.   Conclusions of Law

### A.   The MSA

This action arises from clean-up efforts surrounding the April 2010 BP Deepwater Horizon oil spill. (Doc. 1). On January 11, 2013, the U.S. District Court (E.D. La.) approved a "Medical Benefits Class Action Settlement Agreement (MSA), that would govern any claims from class members affected by the oil spill. (Doc. 36-1 (MSA)). As explained in Howard v. BP Exploration & Production, Inc., 2022 WL 17751496, *1 (11th Cir. Dec. 19, 2022):

> The Deepwater Horizon Medical Benefits Class Action Settlement Agreement (MSA) provided class members … the opportunity to sue BP for medical conditions that manifested after the close of that class action. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 295 F.R.D. 112, 119 (E.D. La. 2013). These suits are called "BELO" or "Back-End Litigation Option" suits. The MSA required that all BELO suits be initially filed in the Eastern District of Louisiana, but provided for their transfer to more appropriate venues at a later time.

Specifically, the MSA offers a BELO for class members seeking compensation for Later-Manifested Physical Conditions (LMPC). Id. See generally Jordan v. BP Exploration & Production, Inc., 2020 WL

1639985 (S.D. Ala. Feb. 3, 2020). An LMPC is defined by the MSA as "a physical condition that is first diagnosed ... after April 16, 2012, and which is claimed to have resulted from ... exposure to oil, other hydrocarbons, or other substances ... dispersants and/or decontaminants used in connection with the response activities." Scarbrough v. BP Exploration & Production, Inc., 2020 WL 3894002, *1 (N.D. Ala. Jul. 10, 2020).

The MSA limits the issues that may be litigated in BELO lawsuits. "Under the terms of the MSA, the following need not be proven in litigation: (1) the fact or existence of the MSA or any other settlement to prove liability or the amount of the class member's claim; (2) the alleged fault of BP for the Deepwater Horizon incident; and (3) exposure of the class member to oil, other hydrocarbons, and other substances released due to the Deepwater Horizon spill and/or dispersants and/or decontaminants used in connection with response activities." Adler v. BP Exploration & Prod., Inc., 2020 WL 10319810, *3 (S.D. Ala. Sept. 1, 2020). Among the issues that may be litigated in a BELO lawsuit are: 1) the fact of diagnosis (and whether the diagnosis was correct); 2) the amount and location of oil, other hydrocarbons, dispersants, and other substances, and the timing of those amounts and locations; 3) the level and duration of the plaintiff's exposure to oil, other hydrocarbons, dispersants, and other substances, and the timing of that exposure; 4) whether the alleged injury was legally caused by the plaintiff's exposure to oil, other hydrocarbons, dispersants, and other substances; 5) whether there exist alternative causes for the alleged injuries; and 6) the amount of compensatory damages, if any (a BELO plaintiff may not seek punitive or other non-compensatory damages). (Doc. 35).

**B.** **Discussion**

King asserts that she was diagnosed with the LMPC of Lung Cancer (non-small cell carcinoma) as a result of performing clean-up work during the oil spill response. (Doc. 1). Defendants move for summary judgment on the basis of King's failure to disclose expert witnesses by the requisite

September 12, 2023 deadline, arguing that she cannot establish causation with respect to her LMPC as a result of exposure to oil or chemical dispersants during clean-up activities following the oil spill.

A plaintiff in a toxic-tort claim must provide reliable expert testimony to establish general and specific causation of the medical condition to the exposure to toxic chemicals. See generally McClain v. Metabolife International Inc., 401 F.3d 1233 (11th Cir. 2005). "General causation is concerned with whether an agent increases the incidence of disease in a group and not whether the agent caused any given individual's disease." Id. at 1239. "Specific causation addresses whether the individual's medical condition/disease was caused by exposure to an agent/toxin." In re Deepwater Horizon Belo Cases, 2022 WL 17734414, *4 at n. 11 (N.D. Fla. Dec. 15, 2022) (citing In re Abilify (Aripiprazole) Prods. Liab. Litig., 299 F. Supp. 3d 1291, 1306 (N.D. Fla. 2018)). As summarized in Jordan v. BP Exploration & Production, Inc., 2020 WL 1639985, *3 (S.D. Ala. Feb. 3, 2020) (footnotes omitted):

> In a toxic exposure tort case like the present one, the Eleventh Circuit has determined that a plaintiff must produce competent evidence of general causation[] and, as well, must prove specific (or individual) causation[]. *See McClain, supra*, 401 F.3d at 1239. The Eleventh Circuit in *McClain* focused on four criteria that a plaintiff must establish through expert testimony to prove causation between a chemical exposure and a particular illness or disease in an individual: (1) the toxic substance in question must have been shown to cause the type of disease or illness in question (general causation); (2) the individual must have been exposed to a sufficient amount of the substance in question to elicit the health effect in question (individual causation);[] (3) the chronological relationship between exposure and effect must be biologically possible (individual causation); and (4) the likelihood that the chemical caused the illness or disease in an individual should be considered in the context of other known causes. *Id. at 1242 & 1243*. Stated somewhat more simply in *McClain*, to prove toxic tort claims … a plaintiff must prove exposure to dispersants/decontaminants (or oil, other hydrocarbons, etc.), the toxicity of those substances, and that their toxicity caused her illnesses/diseases, proof of which "requires expert testimony[.]" *Id. at 1237*. Thus, it comes as no surprise that " '[t]oxic tort cases ... are won or lost on the strength of the scientific evidence presented to prove causation.' " *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir.) (quoting *Rider v. Sandoz Pharmaceuticals Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002)), *cert. denied sub nom. McFarland v. Cheminova, Inc.*, 546 U.S. 935,… (2005).

As such, King "must rely on expert testimony to prove h[er] medical diagnosis and causation." Banegas

v. BP Exploration & Production, Inc., 2019 WL 424683, *2 (E.D. La. Feb. 4, 2019). See also e.g.,

Lowery v. Sanofi-Aventis LLC, 2021 WL 872620, *7 (N.D. Ala. Mar. 9, 2021) ("A diagnosis and the

causation of that diagnosis are essential to establish medical causation … when both are in dispute …

Plaintiff must have competent expert testimony establishing both[]") (citations omitted).

In this case, there is nothing in the record to support causation, only King's bare allegations in

the Complaint. King has not submitted any medical records or other evidence regarding her alleged

LMPC, level of exposure to toxins, or any link between toxins related to the cleanup efforts and her

alleged LMPC. Notably, King disclosed no expert witnesses, failed to file a response to the Defendants'

motion for summary judgment, submitted no evidence regarding general and/or specific causation, and

submitted no scientific evidence. In otherwords, King has offered nothing to indicate, much less

establish, a causal relationship between her alleged LMPC and exposure.

As a result, there is "absolutely no reliable and admissible evidence (expert testimony) of

causation in the record which would establish a genuine issue for trial … Plaintiff's wholesale failure

to provide any expert testimony showing her exposure to toxic chemicals/substances encountered in

the clean-up efforts or that such exposure caused her … [injuries] …. forecloses her ability to establish

a toxic tort cause of action against the Defendants." Jordan, 2020 WL 1639985 at *4. Such is fatal to

King's claim. Thus, King cannot prove an essential element of her BELO claim against the Defendants,

such summary judgment is due to be granted in their favor. See, e.g., Dailey v. BP Exploration & Prod.

Inc., 2022 WL 1721255, *3 (S.D. Ala. May, 27, 2022) ("Daily has failed to present sufficient evidence

that any of his medical conditions resulted from exposure to the toxic chemicals Mr. Dailey's opinion

is speculation and does not create a genuine dispute for trial. Under these facts the failure to provide

expert testimony is fatal to his claim[]"); Adler v. BP Exploration & Production, Inc., 2020 WL

10319810, *4 (S.D. Ala. Sept. 1, 2020) ("[a]lthough Defendants distinguish between general and individual causation … the distinction is irrelevant … Plaintiff makes no showing of any kind … apart from … bare allegations in the Complaint. Plaintiff has not submitted any medical records, expert testimony, or other evidence to the Court regarding … injuries, … level of exposure to toxins, or any link between toxins related to the cleanup efforts and Plaintiff's alleged injuries … Plaintiff has not shown that there is any genuine dispute of material fact as to Defendants' contention that Plaintiff has failed to provide expert evidence and has consequently failed to demonstrate causation, or that such failure is fatal to his claim[]"); Batchelder v. BP Exploration & Prod., Inc., 2020 WL 1638450, *4 (S.D. Ala. Feb. 11, 2020) ("Batchelder has not disclosed any expert witnesses … there exists absolutely no reliable and admissible evidence (expert testimony) of causation….. [this] failure to provide any expert testimony proving his exposure to toxic chemicals/substances encountered in the clean-up efforts or that such exposure caused his chronic eczema forecloses his ability to establish a toxic tort cause of action against Defendants[]").

## IV.    Conclusion

Accordingly, for the reasons set forth *supra*, it is **ORDERED** that Defendants' unopposed Motion for Summary Judgment (Docs. 34-36) is **GRANTED.** A Final Judgment shall be entered by separate document in conjunction with this Order.

**DONE** and **ORDERED** this the **29th** day of **November 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**